Dear Mr. Tate,
Your request for an Attorney General's opinion has been forwarded to me for research and reply. You have asked whether the Ward 2 Recreation District in Livingston Parish (the "District") is prohibited from transferring funds to the Livingston Parish School Board to help construct new athletic facilities for Live Oak High School, which is also located in Ward 2.
The District was created pursuant to La.R.S. 33:4562(A). Any recreation district that is created has the following powers under La.R.S. 42:4562(B):
 B. Any recreation district created under the provisions of Subsection A of this Section shall constitute a body corporate and shall have the power and right to incur debts and enter into contracts and to do and perform any and all acts in its corporate name which are necessary or proper for carrying out the objects and purposes for which the recreation district is created, including, but not limited to, the expropriation of property and the acquisition of equipment, buildings, and physical facilities. It shall have the power to sue and be sued; to buy and sell; to acquire by purchase, gift, expropriation, or otherwise every type and specie of property and servitudes, rights of way, and flowage rights necessary to its purpose; and to lease, build, operate, and maintain any works or machinery designed to accomplish the purposes of the district . . . The district shall constitute an agency of the state of Louisiana designated to carry out an essential governmental function of the state and all of the property of the district shall be exempt from *Page 2 
taxation. It shall have the authority to cooperate and contract with the government of the United States or any department or agency thereof and to accept gifts, grants, and donations of property and money therefrom. It shall have the authority to cooperate with the state of Louisiana or any political subdivision, department, agency, or corporation of the state for the construction, operation, and maintenance of facilities designed to accomplish the purpose for which the district is created on any basis including the matching of funds and by participating in projects authorized by any federal or state law as it shall see fit.
La.R.S. 33:1324 specifically authorizes political subdivisions, such as the District, to enter into intergovernmental agreements to engage jointly in the construction, improvement or acquisition of public projects, provided at least one of the parties to the agreement has the authority to perform such activity. The statute provides, in pertinent part:
 Any parish, municipality or political subdivision of the state, or any combination thereof, may make agreements between or among themselves to engage jointly in the construction, acquisition or improvement of any public project or improvement, the promotion and maintenance of any undertaking or the exercise of any power, provided that at least one of the participants to the agreement is authorized under a provision of general or special law to perform such activity or exercise such power as may be necessary for completion of the undertaking. Such arrangements may provide for the joint use of funds, facilities, personnel or property or any combination thereof necessary to accomplish the purposes of the agreement, and such agreements may include but are not limited to activities concerning:
 (5) Recreational and educational facilities, such as playgrounds, recreation centers, parks and libraries.
It is clear from the language of La.R.S. 33:4562(B) that the District has the authority to perform the activity that would be the subject of the intergovernmental agreement, i.e., acquiring or constructing "equipment, buildings, and physical facilities." The District is further authorized to construct an athletic facility for a local high school by La.R.S. 33:4563, which provides that "[t]he objects and purposes of the recreation districts created under R.S. 33:4562 shall be to own and operate playgrounds and other facilities; or generally to engage in activities which would promote recreation and any related activity designed to encourage recreation and promote the general health and well being of youths." *Page 3 
Although it is the opinion of our office that Ward 2 Recreation District in Livingston Parish may enter into an agreement with the school district to help construct new athletic facilities for Live Oak High School, because the agreement involves the expenditure of public funds, we find the transaction must also be analyzed under La.Const. art. VII, Sec. 14(A), which provides:
 "Section 14(A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private . . .'
The seminal case interpreting this constitutional provision isBoard of Directors of the Industrial Development Board of the Cityof Gonzales, Louisiana, Inc. v. All Taxpayers, Property Owners,Citizens of the City of Gonzales, et al., 2005-2298 (La. 9/6/06),938 So.2d 11 (the "Cabela's" case). In that case, the Louisiana Supreme Court held that that La.Const. art. VII, § 14(A) "is violated when public funds or property are gratuitously alienated."Cabela's, 938 So.2d at 20. In order to determine whether public funds have been "gratuitously alienated," our office has consistently opined that the expenditure: (i) must be for a public purpose that comports with the governmental purpose for which the public entity has legal authority to pursue; (ii) that the expenditure or transfer, taken as a whole, does not appear to be gratuitous; and (iii) that the public entity has a demonstrable, objective, and reasonable expectation of receiving at least equivalent value in exchange for the expenditure or transfer of public funds.
It is the opinion of this office that an expenditure of public funds by Ward 2 Recreation District in Livingston Parish for the purpose of constructing new athletic facilities for Live Oak High School, which is located in Ward 2, is a public purpose the District is statutorily authorized to undertake pursuant to La.R.S. 33:4562(B) and La.R.S. 33:3563. The transfer of public funds, even when accomplished through a cooperative endeavor agreement, is only appropriate under Cabela's if the District has a reasonable expectation of receiving at least equivalent value for the funds it spends. We are without sufficient information to determine whether the District will receive a benefit of equivalent value to the funds it plans to transfer. As such, we are unable to definitively state that the proposed transfer is valid under Louisiana law. Nonetheless, in the event the District is able to effectively demonstrate that it has a reasonable expectation of receiving a benefit at least equivalent to the amount expended or transferred, we believe the proposed transaction would be acceptable.[1] *Page 4 
We trust this adequately responds to your request. However, if our office can be of further assistance, please do not hesitate to contact us.
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL Attorney General
 By: __________________________ Lindsey K. Hunter Assistant Attorney General
 JDC/LKH/crt
[1] This opinion is consistent with past opinions of this office. La. Atty. Gen. Op. No. 04-0389 concluded that "[a]ssuming the Agreement with the City of Westlake with respect to a golf course complex which is under consideration by Recreation District No. 1, Ward 4 of Calcasieu Parish is determined to create a public benefit for the District that is proportionate to the risks and costs associated therewith, the Agreement should be considered to be a legally sanctioned cooperative endeavor." Likewise, Atty. Gen. Op. No. 92-722 determined that the Recreation and Park Commission for the Parish of East Baton Rouge could enter into a cooperative endeavor agreement with the Santa Maria Partnership in Commendum to share the cost of a public access road and to pay for a railroad gate crossing to afford public access to the Santa Maria Golf Course. BREC's Agreement constituted a valid obligation authorized by its statutory duty to contract for the development of public recreational facilities such as the golf course. The opinion concluded that BREC's expenditures served a public purpose of affording the general public access to the Santa Maria Golf Course and its related facilities. Finally, La. Atty. Gen. Op. No. 80-1238 concluded that a recreation district could provide funds to transfer ownership and maintenance of a gymnasium to a local school board pursuant to a cooperative endeavor agreement.